IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SHENNACO HOLDINGS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:18-cv-00072-O |
| | § | |
| MITCHELL CHAD BARRETT | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

COMES NOW Plaintiff ShennaCo Holdings, LLC ("ShennaCo") and files this Proposed Findings of Fact and Conclusions of Law, as required by the Court's Scheduling Order and Local Rule 52.1. ShennaCo respectfully requests the right to submit supplemental or amended findings and conclusions based on the Court's rulings during or after trial. Any proposed finding of fact that is more properly characterized as a conclusion of law should be considered as such, and any proposed conclusion of law that is more properly characterized as a finding of fact should be considered as such.

Plaintiff's Original Petition was filed on May 18, 2017 in the 141st Judicial District Court of Tarrant County, Texas. ShennaCo filed its First Amended Petition (the "Petition") on June 6, 2017. Defendant Mitchell Chad Barrett ("Barrett") filed his Answer to Plaintiff's Original Petition on July 3, 2017 (the "Answer"). On February 1, 2018, Barrett removed this case to the present Court. Dkt. No. 1. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332(a). Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

## I.     FINDINGS OF FACT

1. ShennaCo is a strategic consulting services entity that has provided consulting services across a variety of industries.

2. In January 2014, ShennaCo was engaged by WHIG Enterprises, LLC ("WHIG") to provide strategic consulting services. Barrett, who was a manager of WHIG, requested ShennaCo's assistance related to the management of certain compounding pharmacy businesses in Mississippi and other locations.

3. From January 2014 through March 2015, ShennaCo provided consulting services to WHIG and Barrett related to, *inter alia*, business operations, corporate governance, financial reporting, and strategic planning.

4. Under the original terms of the parties' agreement, ShennaCo was to receive monthly payments based on work performed from month to month. Beginning in August of 2014, Barrett and ShennaCo agreed that ShennaCo would instead monthly distributions from WHIG totaling approximately $300,000 per month in lieu of the prior billing arrangement.

5. Eventually, a dispute arose concerning money owed to ShennaCo for the consulting services it provided. To resolve the dispute, ShennaCo, WHIG, and Barrett individually entered into the Confidential Settlement and Mutual Release Agreement (the "Agreement") on April 17, 2015.

6. The Agreement was jointly prepared by David Alan Meeker, the manager of ShennaCo, and counsel for Barrett.

7. As payment for the consulting services it provided, ShennaCo agreed to accept the total amount of $1,723,862.64, such amount defined in the Agreement as the "Agreed Fee."

8. Under the terms of the Agreement, the Agreed Fee was to be paid first by assigning revenue from distributions WHIG was to receive from entities known as the ColorFarm entities.

9. In the event that the revenue from distributions assigned to ShennaCo by WHIG was insufficient to pay the Agreed Fee, WHIG and Barrett agreed to use other revenue or assets to pay the difference, such difference defined in the Agreement as the "Shortfall."

10. In return for payment of the Agreed Fee, ShennaCo agreed to release all claims against WHIG and Barrett, individually.

11. Additionally, ShennaCo agreed to maintain the existence of the Agreement in full confidentiality and secrecy.

12. At the time the parties entered into the Agreement, Barrett wished to carry forward in other business with ShennaCo unrelated to WHIG.

13. Barrett's agreement to be personally responsible for payment of the Shortfall—in the event it became due—was paramount to ShennaCo contemplating any future business with Barrett.

14. ShennaCo received the following distribution payments assigned to it by WHIG as payment toward the Agreed Fee: (1) $176,137.36 on March 6, 2015; (2) $72,163.90 on March 19, 2015; (3) $52,945.93 on May 19, 2015; (4) $64,845.33 on May 20, 2015; and (5) $55,592.25 on June 23, 2015.

15. The total revenue from distributions assigned from WHIG to ShennaCo as payment toward the Agreed Fee totaled $422,044.77, leaving a Shortfall in the amount $1,301,817.87 owed to ShennaCo.

16. The parties intended that Barrett, individually, would be liable along with WHIG for payment of the Shortfall in the event that distribution revenue assigned from WHIG to ShennaCo ceased for any reason.

17. Barrett failed to make any payment toward the Shortfall, either in his individual capacity or in his capacity as a purported representative of WHIG.

18. ShennaCo complied with its obligations under the Agreement.

19. At the time Barrett represented to ShennaCo that he would pay the Shortfall in the event it came due, such representation was false. Barrett knew the representation was false at the time he made the representation.

20. Barrett represented to ShennaCo that he would pay the Shortfall in the event it came due with the intent that ShennaCo would rely on the representation by execute the Agreement and by continuing to pursue business ventures with Barrett unrelated to WHIG.

21. ShennaCo relied on Barrett's representation that he would agree to pay the Shortfall in the event it came due by executing the Agreement and continuing to pursue business ventures with Barrett unrelated to WHIG.

22. ShennaCo would not have entered into the Agreement but for Barrett's representation that he would pay the Shortfall in the event it became due.

23. ShennaCo would not have continued conducting business with Barrett but for Barrett's representation that he would pay the Shortfall in the event it became due.

24. On February 1, 2018, Barrett filed an unredacted copy of Plaintiff ShennaCo Holdings, LLC's Traditional and No-Evidence Motion for Partial Summary Judgment, including a copy of the Agreement as an exhibit, with the Court.

25. Barrett admitted that

## II.     CONCLUSIONS OF LAW

26.     The Agreement is a valid, enforceable contract. *Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996) (holding that a settlement agreement is enforceable "in the same manner as any other contract").

27.     The Agreement is not ambiguous as to whether Barrett signed the Agreement in his individual capacity. *See Millard Interest, Inc. v. J & A Leisure, Ltd.*, 01-12-01015-CV, 2014 WL 1878913, at *5 (Tex. App.—Houston [1st Dist.] May 8, 2014, no pet.) (citing *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)). Contracts should be interpreted by courts in a manner that gives meaning to all provisions. *Id.*

28.     ShennaCo's agreement to contemplate future business with Barrett conferred a benefit unique to Barrett and constitutes consideration for Barrett's execution of the Agreement. *See Gooch v. Am. Sling Co., Inc.*, 902 S.W.2d 181, 185 (Tex. App.—Fort Worth 1995, no writ).

29.     Barrett is personally obligated under the Agreement to pay the Shortfall. *See Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 180 (Tex. 1965) (stating the rule that "all parts of a contract are to be taken together, and that such meaning shall be given thereto as will carry out and effectuate to the fullest extent the intention of the parties."); *see also Coker*, 650 S.W.2d at 394 ("Courts must favor an interpretation that affords some consequence to each part of the instrument so that none of the provisions will be rendered meaningless."); *see also Prudential Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 219 (Tex. 2003) (holding that when terms are defined in a contract, those definitions control the interpretation of the contract).

30.     Barrett's failure to pay the Shortfall is a breach of the Agreement. *See DeSantis v. Wackenhut Corp.*, 732 S.W.2d 29, 34 (Tex. App.—Houston [14th Dist.] 1987), *rev'd in part on*

*other grounds*, 793 S.W.2d 670 (Tex. 1990) (explaining that "the failure to perform any promise which forms a whole or part of any agreement" constitutes a breach of the agreement).

31. Barrett's performance under the Agreement is not excused by ShennaCo's alleged filing of an unredacted copy of a motion for summary judgment in state court prior to removal. *See Hewitt v. Biscaro*, 353 S.W.3d 304, 308-09 (Tex. App.—Dallas 2011, no pet.) (holding that attaching a settlement agreement to a motion for summary judgment does not excuse a defendant's performance under the contract); *see also Deep Nines, Inc. v. McAfee, Inc.*, 246 S.W.3d 842, 848 (Tex. App.—Dallas 2008, no pet.) (stating that where a plaintiff's alleged breach did not occur until after defendant had already breached the agreement, the plaintiff was excused from any further performance).

32. Barrett waived his asserted affirmative defense that ShennaCo breached the confidentiality portion of the Agreement by himself filing an unredacted copy of the Agreement on the Court's docket. *See Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008) (stating a party waives its right when it intentionally performs conduct inconsistent with an intent to claim that right); *see also Motor Vehicle Bd. Of Tex. Dept. of Transp. V. El Paso Independent Auto Dealers Ass'n, Inc.*, 1 S.W.3d 108, 111 (Tex. 1999) ("[w]hen the facts and circumstances are admitted or clearly established, the question [of waiver] becomes one of law.").

33. ShennaCo suffered damages in the amount of $1,301,817.87 as a result of Barrett's breach of the Agreement. *See City of The Colony v. North Texas Mun. Water Dist.*, 272 S.W.3d 699, 739 (Tex. App.—Fort Worth 2008, pet. dism'd) (citing *Mays v. Pierce*, 203 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2011, no pet.)) ("The normal measure of damages in a breach of contract case is the benefit of the bargain, the purpose of which is to restore the injured party to the economic position it would have been in had the contract been performed.").

34. ShennaCo is entitled to recover from Barrett the sum of $1,301,817.87 as a result of Barrett's breach of the Agreement. *See Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 ("In an action for breach of contract, actual damages may be recovered when loss is the natural, probable, and foreseeable consequence of the defendant's conduct.").

35. Barrett is liable to ShennaCo for common-law fraud as a result of Barrett's representation that he would agree to pay the Shortfall in the event it came due. *See Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015 (outlining the elements of a claim for common-law fraud).

36. ShennaCo is entitled to recover damages from Barrett the sum of $1,301,817.87 as a result of Barrett's fraud. *See Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 775 (Tex. 2009) (holding that a plaintiff can recover benefit-of-the-bargain damages as a result of a defendant's fraud).

37. ShennaCo is entitled to recover exemplary damages as a result of Barrett's fraud. Tex. Civ. Prac. & Rem. Code § 41.003(a)(1); *Tony Gullo Motors, I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006).

38. ShennaCo is entitled to recover prejudgment interest on all sums awarded at the rate of 5.5% per annum from December 21, 2015 through the date of judgment. Tex. Fin. Code § 304.003; *See International Turbine Services, Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 500 (5th Cir. 2002) ("Texas common law allows prejudgment interest to accrue at the same rate as post-judgment interest on damages awarded for breach of contract."); *see also Federal Sav. And Loan Ins. Corp. v. Texas Real Estate Counselors, Inc.*, 955 F.2d 261, 270 (5th Cir. 1992) (explaining that state law governs the award of prejudgment interest).

39.     ShennaCo is entitled to recover post-judgment interest on all sums awarded at the rate of 2.59% per annum from the date of final judgment until paid. *See* 28 U.S.C. § 1961(a).

Respectfully submitted,

_____
Mark L. Johansen
State Bar No. 10670240
mjohansen@perkinscoie.com
Steve Smith
State Bar No. 24095623
estevesmith@perkinscoie.com

**PERKINS COIE, LLP**
500 N. Akard St. Suite 3300
Dallas, Texas 75201
Phone: 214-965-7700
Facsimile: 214-965-7799

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was served via email on all counsel of record on February 8, 2019.

Robert M. Castle, III.
Rob.castle@btlaw.com
State Bar No. 24036338
Jamie R. Welton
jwelton@btlaw.com
State Bar No. 24013732
Lucas C. Wohlford
lwohlford@btlaw.com
State Bar No. 24070871
**BARNES & THORNBURG LLP**
2121 North Pearl Street, Suite 700
Dallas, Texas 75201
Phone: 214-258-4149
Facsimile: 214-258-4199

***ATTORNEYS FOR DEFENDANT
MITCHELL CHAD BARRET***

_____
Mark L. Johansen
Steve Smith