IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SHENNACO HOLDINGS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:18-cv-00072-O |
| | § | |
| MITCHELL CHAD BARRETT, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff ShennaCo Holdings, LLC ("ShennaCo") filed suit against Defendant Mitchell Chad Barrett ("Barrett"), alleging breach of contract and fraud. Plaintiff moved for partial summary judgment, and the Court granted Plaintiff's motion in part. *See* Order, February 4, 2019, ECF No. 55. The remaining issues required a trial, which was held on March 4, 2019.

## I.  BACKGROUND

ShennaCo, WHIG Enterprises, LLC ("WHIG"), and Barrett entered into the Confidential Settlement and Release Agreement (the "Agreement") at issue on April 17, 2015. The parties entered the Agreement to partially resolve claims for money ShennaCo contends it was owed—which totaled $1,723,862.64. *See* Joint Pretrial Order 4. This amount is defined in the Agreement as the "Agreed Fee."

At the summary judgment stage, the Court denied Plaintiff's motion for summary judgment on its breach of contract claim and deferred ruling on one of Defendant's affirmative defense, which was an allegation that Plaintiff committed a prior material breach by breaching the confidential nature of the Agreement. *Id.* The Court also dismissed Barrett's defenses of waiver, accord and satisfaction, estoppel, laches, and that Plaintiff's claim was barred due to Plaintiff's alleged fraud.

1

*Id.* at 10. The Court then concluded that portions of the contract purporting to assign personal liability to Barrett were ambiguous, requiring a trial.

At trial, the primary dispute was whether the parties intended Barrett to be personally obligated to pay the Agreement's "Agreed Fee" and any "Shortfall." During the trial, Alan Meeker ("Meeker"), manager of ShennaCo, and Barrett, manager of WHIG, testified. Both Meeker and Barrett testified about their respective views on the meaning of the Agreement.

The Court now sets out its Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a). The following findings and conclusions are based upon the pleadings, testimony, evidence, and exhibits admitted at trial. The Court has reviewed the record in its entirety and had the opportunity to observe the witnesses presented at trial to assess their credibility and weigh their testimony. The Court provides a clear understanding of the bases of its decision in accordance with the level of detail required in this Circuit. *See Century Marine Inc. v. United States*, 153 F.3d 225, 231 (5th Cir. 1998).

## II.    FINDINGS OF FACT

The Court finds that, based on the preponderance of the evidence, the parties' intended the Agreement to bind Barrett both in his personal capacity *and* in his capacity as manager of WHIG. Meeker testified and explained that from January 2014 through March 2015, ShennaCo provided consulting services to WHIG—as well as to Barrett individually—related to, *inter alia*, business operations, corporate governance, financial reporting, and strategic planning. After a dispute arose regarding the amount of money owed to ShennaCo for consulting services, ShennaCo, WHIG, and Barrett entered into the April 15, 2015 Agreement. Under the Agreement, Meeker testified the parties intended that Barrett would be personally liable for payment of the Shortfall if the distribution revenue assigned from WHIG to ShennaCo ceased or proved insufficient.

Meeker also testified that he intentionally included the word "individual" in the last

paragraph of the Agreement in order to personally bind Barrett. He further explained that the meaning of the word "its" in paragraph two meant WHIG *and* Barrett as defined in the Agreement. Finally, Meeker's testimony reinforced that Barrett's obligations regarding the Agreed Fee and Shortfall were not limited to Barrett's role as manager of WHIG.[1]  Specifically, Meeker emphasized he would not have continued to do business with Barrett unrelated to WHIG had the Agreement not intended to hold Barrett personally liable.  The Court finds this testimony credible.

Barrett testified and denied agreeing to be personally obligated to pay anything pursuant to the Agreement.  Instead, he testified that he was specifically named in the Agreement because he may be required as WHIG's manager to execute paperwork to ensure the WHIG assets were distributed to ShennaCo.  Having observed Barrett's demeanor and testimony, the Court finds this testimony not credible for several reasons.  First, Barrett testified that he deliberately entered into the Agreement, but also called it a "sham." Barrett explained that the Agreement contained various "misrepresentations."  For example, he testified that the following provision was false: "WHEREAS, at the request of WHIG/Barret, ShennaCo provided strategic executive consulting services and strategic business consulting (Consulting Services) to WHIG/Barrett." He testified ShennaCo never provided him any service personally. He also denied that he was provided anything in exchange for signing the Agreement, even though it expressly provides: "WHEREAS Barrett wishes to carry forward in other businesses with ShennaCo not related to WHIG and this Agreement is paramount to ShennaCo contemplating any future business with Barrett."  Barrett would have the Court believe that he signed the Agreement, even though he contends the premise for it was false. This portion of his testimony is not credible. However, Barrett's testimony that he understood the

---

[1] Meeker's testimony on this issue is further corroborated in that if Barrett's obligations under the Agreement were limited to his managerial capacity, there would not have been any reason to personally name him.  The evidence and argument at trial did not establish a reason otherwise.

Agreement's value, which settled matters with Meeker, is believable.

Based on the evidence, and after making the appropriate credibility determinations, the Court finds the parties' intent at the time they executed the Agreement was for Barrett to be personally liable under the Agreement.

### III.     CONCLUSIONS OF LAW

#### A.     Breach of Contract

Under Texas law, a breach of contract claim requires: (1) the existence of a valid and enforceable contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach. *Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App.—San Antonio 2015, pet. denied) (citation omitted).

Here, the Court finds that under the Agreement, ShennaCo provided Barrett valid consideration because ShennaCo agreed to release all claims against WHIG and Barrett individually. *See Bank One, Tex. N.A. v. Taylor*, 970 F. 2d 16, 25–26 (5th Cir. 1992). Under the Agreement, ShennaCo also agreed to continue doing business with Barrett unrelated to WHIG. *See Gooch v. Am. Sling Co., Inc.* 902 S.W. 2d 181 (Tex. App.—Fort Worth 1995, no writ) ("an agreement to continue doing business with a party confers a benefit on that party"); *See also Ropa Exploration Corp. v. Barash v Energy, Ltd.*, 2013 WL 2631164, at *7 (Tex. App.—Fort Worth June 13, 2013, pet. denied).

Next, Barrett acknowledged that he did not pay any Shortfall and the evidence showed the total revenue from the distributions assigned from WHIG to ShennaCo as payment toward the Agreed Fee totaled $422,044,77, leaving a Shortfall of $1,301,817.87. Barrett did not introduce any evidence to the contrary on the amount owed. Therefore, by not paying the Shortfall, Barrett

4

breached the Agreement and ShennaCo suffered damages in the amount of $1,301,817.87.

Under the Agreement, ShennaCo agreed to maintain the existence of the Agreement in full confidentiality and secrecy. The Court finds that with the exception of filing the lawsuit, Meeker never disclosed the Agreement. Therefore, ShennaCo did not commit a prior material breach of the Agreement by filing an unredacted copy of the Agreement in state court. *See Hewitt v. Biscaro*, 353 S.W. 3d 304, 311 (Tex. App.—Dallas 2011, no pet); *See also Deep Nines, Inc. v. McAfee, Inc.*, 246 S.W. 3d 842, 848 (Tex. App.—Dallas 2008, no pet.).

Accordingly, ShennaCo established the existence of a valid and enforceable contract; ShennaCo performed or tendered performance; Barrett breached the contract; and ShennaCo suffered damages in the amount of $1,301,817.87 as result of the breach. *Brooks*, 486 S.W.3d at 36. ShennaCo is therefore entitled to recover damages in the amount of $1,301,817.87 from Barrett.

Moreover, ShennaCo is entitled to recover prejudgment interest on all sums awarded. *See* TEX. FIN. CODE § 304.003; *See International Turbine Services, Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 500 (5th Cir. 2002) ("Texas common law allows prejudgment interest to accrue at the same rate as post-judgment interest on damages awarded for breach of contract."); *see also Federal Sav. And Loan Ins. Corp. v. Texas Real Estate Counselors, Inc.*, 955 F.2d 261, 270 (5th Cir. 1992) (state law governs the award of prejudgment interest). ShennaCo is also entitled to recover post-judgment interest on all sums awarded from the date of final judgment until paid. *See* 28 U.S.C. § 1961(a).

    **B.**    **Fraud**

A common-law fraud claim requires "'a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury.'" *Zorrilla v. Aypco Constr. II, LLC,* 469 S.W.3d 143, 153 (Tex. 2015) (citation omitted). Here, the Court finds

that the Plaintiff's fraud claim fails. Meeker testified that at the time the parties entered the Agreement, Barrett represented to ShennaCo that he would pay the Shortfall in the event it came due, and that his defense in this case demonstrates this representation was false. But the Court finds that at the time the parties entered the Agreement, both parties intended Barrett would be personally liable. Therefore, Barrett's representation was not false, even though he now claims he did not make that representation. As such, Plaintiff has failed to establish the falsity element of a common law fraud claim.

### IV.  CONCLUSION

Based on the foregoing, ShennaCo prevails on its breach of contract claim and is entitled to recover damages in the amount of $1,301,817.87 from Barrett. ShennaCo is also entitled to pre-judgment and post-judgment interest. The Court deferred ruling on Plaintiff's motion for attorneys' fees. It is therefore **ORDERED** that Plaintiff file a motion for attorneys' fees in accordance with Federal Rule of Civil Procedure 54 on or before **March 27, 2019**.

**SO ORDERED** on this **13th day** of **March, 2019**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**